UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,

v.

C.J.'S FINANCIAL, and
CANDICE CAMPBELL

        Defendants.

_____/

Case No. 10-13083

District Judge Steven J. Murphy, III
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Summary Judgment [Doc. #39], filed on January 27, 2012, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On August 4, 2010, Plaintiff Securities and Exchange Commission ("SEC") filed this emergency enforcement action alleging that Defendants raised over $1 million from dozens of unsuspecting private investors through a "classic Ponzi scheme." *Plaintiff's Complaint*, ¶ 1. Plaintiff SEC alleges violations of Section 17(a) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77q *et seq.*; Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; and Sections 206(1) and 206(2) of the Investment Advisors Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1) and 80b-6(2). Plaintiff requested the following relief: 1) a permanent injunction enjoining Defendants from violating the securities laws in question; 2) a disgorgement of ill-gotten gains; and 3) civil penalties.

The following facts are undisputed.  Defendant CJ's Financial ("CJF") was a financial services company based in Canton, Michigan, which was founded by Defendant Campbell and her colleague Jessie A. Wozniak in April 2009.  *Plaintiff's Motion for Summary Judgment* [Doc. #39], Ex. A, 2.[1]  On the CJF website, Defendant Campbell was listed as "Chief Financial Officer" and Wozniak, "Founder" and "Chief Executive Officer."  *Id.*  For all practical purposes, it appears that Campbell and Wozniak exercised exclusive control over CJF.  *Id.*

From April 2009 through at least August 2010, Defendant Campbell implemented a scheme to defraud CJF investors.  *Id.*  CJF courted investors by claiming that initial investments would never lose value and that client funds could be withdrawn at any time. *Id.*  Defendant Campbell also claimed that she was a licensed financial planner and investment banker, when in fact she had no relevant qualifications.  *Id.*  Campbell, and others working at her direction, claimed that CJF would make daily stock trades via a TD Ameritrade account on each investor's behalf, of which CJF would pay a guaranteed return of ten to twenty percent on a monthly basis.  *Id.*, 3.  During its brief existence, CJF convinced eighty individuals to invest a total of $1,190,470.  *Id,* 4-5.

Instead of making daily trades with investment funds, however, Campbell and Wozniak utilized a majority of the assets for personal benefit including purchases of jewelry, furniture, airline tickets, and vehicles, among other expenditures.  *Id.*, 3.  In classic Ponzi scheme fashion, CJF utilized incoming investments to make monthly payments to other investors, deceptively characterizing the payments as "investment returns."  *Id.*  Additionally, CJF sent monthly statements to investors that fabricated earned profits.  *Id.*, 4.  Defendant

---

[1]Plaintiff's Exhibit A is Defendant's Rule 11 Plea Agreement from her corresponding criminal case, the details of which, will be discussed below.

Campbell admits to making other false assurances to investors  concerning expected investment returns throughout 2009 and 2010. *Id.*

However, by mid-2010, CJF could no longer quell investors' concerns and investors began requesting to withdraw their money. *Id.*  In response, Campbell, and others working at her direction, falsely communicated to investors that their funds could not be retrieved because the SEC had "frozen" CJF's accounts, when in fact no asset-freeze had been implemented at that time. *Id.*  On August 4, 2010, CJF's misrepresentations became a reality when the SEC filed this civil action against CJF and Campbell.  Refusing to provide any details concerning Plaintiff's allegations, Defendant Campbell asserted her Fifth Amendment right against self-incrimination in her Answer to Plaintiff's Complaint. *Defendant's Answer to Plaintiff's Complaint* [Doc. #21].

On July 20, 2011, the United States Attorney for the Eastern District of Michigan filed a first superseding criminal information against Defendant Campbell, charging her with one count of wire fraud as a result of the allegations set forth in Plaintiff SEC's Complaint. *United States v. Campbell*, 2:11-cr-20388 (E.D. Mich).  On January 23, 2012, Defendant Campbell signed a Revised Rule 11 Plea Agreement, pleading guilty to one count of wire fraud.  On the same day, Judge Gerald E. Rosen found Campbell guilty of wire fraud, imposing a sentence of fifty-one months in prison and ordering her to pay restitution in the amount of $703,474.10. *United States v. Campbell*, 2:11-cr-20388 (E.D. Mich.), [Doc. #17]. Additionally, Judge Rosen demanded that Defendant Campbell forfeit an itemized list of personal property and $1,190,470 in cash.

As a result of the admissions made by Defendant Campbell in her Revised Rule 11 Plea Agreement from the corresponding criminal case, Plaintiff SEC filed a Motion for Summary Judgment [Doc. #39] based on the doctrine of collateral estoppel.  The

Commission requests the following relief: 1) a permanent injunction against both Defendants; 2) that the Court find Defendants jointly and severally liable for a disgorgement of $794,274.10, with a prejudgment interest of $39,198.52; and 3) civil penalties as deemed appropriate by the Court. *Plaintiff's Motion for Summary Judgment* [Doc. #39], ¶ 7. The SEC takes the position that amounts paid by Defendant Campbell towards the restitution penalty from her criminal case should be credited to any disgorgement imposed by the Court in this civil suit. *Id.* Defendant Campbell has failed to respond to Plaintiff's Motion for Summary Judgment.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir.

2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper.  *Celotex Corp.*, 477 U.S. at 322-23.

## III.  DISCUSSION

### A.  COLLATERAL ESTOPPEL

Plaintiff SEC bases its Motion for Summary Judgment on an application of the doctrine of collateral estoppel.   The SEC argues that the admissions contained in Defendant Campbell's Rule 11 Plea Agreement from the corresponding criminal case preclude her from disputing the allegations set forth in the Complaint. *Plaintiff's Motion for Summary Judgment* [Doc. #39], 6.   The SEC contends that the issues in this civil case were litigated in the criminal case; and therefore, the Commission is entitled to Summary Judgment on all four counts of the Complaint. *Id*., 8.  Citing Sixth Circuit case law**,** the SEC submits that collateral estoppel applies despite the fact that Defendant Campbell's criminal conviction was for wire fraud, rather than for a violation of securities laws**,** because of the commonality of factual issues in both proceedings.   *Plaintiff's Motion for Summary Judgment* [Doc. #39], 7.

The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in

a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987), the Sixth Circuit Court of Appeals held that collateral estoppel applies when: "1) the precise issue raised in the present case must have been raised an actually litigated in the prior proceeding; 2) determination of the issue must have been necessary to the outcome of the prior proceeding; 3) the prior proceeding must have resulted in a final judgment on the merits; and 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." It is a well established principle that "a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951); *See also Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2003). However, "[s]uch estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951) (citing *Frank v. Magnum*, 237 U.S. 309, 334 (1915)). In granting a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) based on a Plea Agreement from a corresponding criminal case under the doctrine of collateral estoppel, the primary inquiry is whether the factual bases for the criminal conviction are the same factual bases which the civil suit relies upon. *See e.g. S.E.C. v. Fisher*, No. 07-12552, 2011 WL 3652195, at *2 (E.D. Mich. Aug. 19, 2011).

I will now apply the four-part test set forth in *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987) in order to determine whether Defendant Campbell's Rule 11 Plea Agreement entitles Plaintiff SEC to summary judgment based on the doctrine of collateral estoppel.

### 1.  The precise issues in this case were litigated in the prior proceeding

In Counts I and II, Plaintiff alleges that Defendants violated Section 17(a) of the

Securities Act of 1933, which provides that:

> (a) It shall be unlawful for any person in the offer or sale of any securities or any security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>> (1) to employ any device, scheme, or artifice to defraud
>>
>> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>>
>> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q.  In Count III**,** Plaintiff alleges that Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Rule 10b-5**,** 17 C.F.R. § 240.10b-5.

Section 10(b) provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange
>> b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §§ 78j(b).  Rule 10b-5 provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>> (a) To employ any device, scheme, or artifice to defraud,
>>
>> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates
> or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  In *S.E.C. v. George*, 426 F.3d 786, 792 (6th Cir. 2005), the Sixth

Circuit Court of Appeals described the standard for establishing a violation of both Section

17(a) of the Securities Act and Section 10(b)/Rule 10b-5:

> *To establish violations of these anti-fraud provisions, the SEC must show that
> the defendants engaged in (1) misrepresentations or omissions of material facts
> (2) made in connection with the offer, sale or purchase of securities (3) with
> scienter on the part of the defendants. Ernst & Ernst v. Hochfelder*, 425 U.S.
> 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)**.** A fact is material if a substantial
> likelihood exists that (1) a reasonable shareholder would consider the fact
> important in making his investment decision and (2) a reasonable shareholder
> would view the information as having significantly altered the total mix of
> information. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99
> L.Ed.2d 194 (1988). Scienter may be established by proof of recklessness-
> "highly unreasonable conduct which is an extreme departure from the standards
> of ordinary care.*" Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025
> (6th Cir.1979)**.** (Emphasis added)**.**

In addition to the criteria set forth in *Sec v. George*, Rule 10b-5 requires that "the maker

of a statement is the person or entity with ultimate authority over the statement, including its

content and whether and how to communicate it." *Janus Capital Group, Inc. v.  First derivative*

*Traders*, 131 S. Ct. 2296, 2302 (2011).

Finally, in Count IV, Plaintiff SEC alleges that Defendant Campbell violated Sections

206(1) and (2) of the Advisors Act, 15 U.S.C. §§ 80b-6(1) and (2), which provides that:

> It shall be unlawful for any investment adviser, by use of the mails or any
> means or instrumentality of interstate commerce, directly or indirectly**--**
>
>> (1) to employ any device, scheme, or artifice to defraud any client or
>> prospective client;
>>
>> (2) to engage in any transaction, practice, or course of business which
>> operates as a fraud or deceit upon any client or prospective client;

15 U.S.C. §§ 80b-6(1) and (2). The Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2.

Due to the commonality of the above-listed securities regulations, courts have held that proving a violation of one regulation will generally show a violation of the remaining regulations. *See e.g. S.E.C. v. Young*, No. 09-1634, 2011 WL 1376045, at *7 (E.D. Pa., Apr. 12, 2011) ("Facts showing a violation of Section 17(a) or 10(b) by an investment adviser will also support a showing of a Section 206 violation.").

Defendant Campbell's Rule 11 Plea Agreement for wire fraud contains a multitude of admissions, which clearly establish the necessary elements for all Counts of Plaintiff's Complaint. First, as discussed above, Defendant Campbell admitted to making numerous misrepresentations to CJF investors. Among other admissions, Campbell conceded to the following false statements: 1) she was a licensed financial planner; 2) CJF would make daily stock trades; 3) CJF would issue a guaranteed rate of return of ten to twenty percent on a monthly basis; and 4) investment funds could be withdrawn at any time. *See Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A, 3. Undoubtedly, any reasonable shareholder would consider these omissions as "important to making his investment decision," thus qualifying them as "material." *SEC v. George*, 426 F.3d 786, 792 (6th Cir. 2005) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)**.**

Second, Campbell conceded that the misrepresentations mentioned above were made in connection to the daily trading of stock via a TD Ameritrade account. *See Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A, 3. Moreover, Campbell admitted that CJF was in the business of making stock trades on behalf of its investors. *Id.*

Third, Campbell acted with scienter.  Campbell explicitly conceded that she "devised a scheme to defraud in order to obtain money or property." *Id.*, 1.  Moreover, Campbell admitted that the majority of investment assets were utilized for her and Wozniak's personal benefit rather than for business purposes.  *Id.*, 3.

The undisputed evidence also establishes that Defendant Campbell's conduct satisfies the remaining elements of the securities regulations in question.  With respect to her liability under Rule 10b-5, it is evident that Defendant Campbell had "ultimate authority" over the misrepresentations in question. *See Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).  Campbell's degree of control is evident from her Rule 11 Plea Agreement indicating that she and Wozniak "owned and controlled CJF."  *Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A, 3.  And because CJF provided investment services, Defendant Campbell qualifies as an "investment adviser" under the Adviser Act. *See* 15 U.S.C. § 80b-2.  The Rule 11 Plea Agreement also establishes that Defendant Campbell utilized the mails or instrumentalities of interstate commerce to perpetuate her fraud.  By Campbell's own admission, she defrauded investors by "wire, radio, or television communications in interstate commerce in furtherance of that scheme."  *Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A, 3.

Accordingly, the precise issues in this civil litigation were litigated in Defendant Campbell's corresponding criminal case.

2. Determination of the issues in question was necessary to the outcome of the prior proceeding

In her criminal case, Plaintiff pled guilty to one count of wire fraud under 18 U.S.C. § 1343, which, in relevant part states that:

> Whoever, having devised or intending to devise any scheme or artifice to
> defraud, or for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  Due to the similarity between 18 U.S.C. § 1343 and the securities regulations alleged in the civil case, it is evident that the factual issues in both proceedings are essentially the same, and that these factual issues were necessary to support a conviction under 18 U.S.C. § 1343.  Therefore, the second prong of the collateral estoppel criteria set forth in *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987), is satisfied.

### 3. The prior proceeding resulted in a judgment on the merits

Campbell's Rule 11 Plea Agreement resulted in a final judgment on the merits in her the corresponding criminal case. *See United States v. Campbell*, 2:11-cr-20388 (E.D. Mich.), [Doc. #17].

### 4. Full and fair opportunity to litigate the issues in prior proceeding

There is no indication that Campbell did not have a full and fair opportunity to litigate the issues in the prior criminal proceeding.  Upon executing the Plea Agreement, Campbell indicated that she understood its terms and that she was entering into the agreement voluntarily. *See Plaintiff's Motion for Summary Judgment,* [Doc. #39], Ex. E, 18.  Moreover, Campbell signed the Plea Agreement alongside her Attorney, Ms. Rita Chastang. *Id.*  Accordingly, the Court finds that Campbell had a full and fair opportunity to litigate the issues in the prior criminal proceeding.

Because the four prong test set forth in *NAACP v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987) is satisfied, the doctrine of collateral estoppel applies and Plaintiff SEC is entitled to Summary Judgment with respect to its claims against Defendant Campbell.

B. JOINT AND SEVERAL LIABILITY

The SEC argues that Campbell and CJF should be jointly and severally liable.  Citing *SEC v. Tome*, 638 F. Supp. 596, 624-25 (S.D.N.Y. 1986), the SEC contends that because Campbell was a "high ranking officer" who committed securities violations her actions are attributable to and binding on CJF.  *Plaintiff's Motion for Summary Judgment*, [Doc. #39], 11. Specifically, the SEC asks that the Court find Campbell and CJF jointly and severally liable for disgorgement of $794, 274.10 with a prejudgment interest of $39,198.52 in addition to civil penalties as deemed necessary by the Court.  *Id.*, 2.

 "It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct. . .This holds true even where one defendant is more culpable than another." *S.E.C. v. Calvo,* 378 F.3d 1211, 1215 (11th Cir. 2004) (*Citing S.E.C. v. Hughes Capital* Corp., 124 F.3d 455 (3rd Cir. 1997); *S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)).  "A court may impose joint several liability on relief defendants where the evidence establishes the requisite close relationship between a defendant and the relief defendants and joint benefit." *S.E.C. v. Salyer*, 08-cv-179, 2010 WL 3283026 at *4 (E.D. Tenn. Aug. 18, 2010) (citing *S.E.C. v. J.T. Wallenbrock & Assoc.*, 440F.3d 1109, 1116 (9th Cir. 2006); *See also S.E.C. v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991) (Finding joint an several liability appropriate where individual Defendants' actions are "inextricably interwoven" with their company).

Because Campbell was essentially CJF's alter ego, joint and several liability is appropriate.  Cambell's Plea Agreement is replete with factual admissions demonstrating that her actions were "inextricably interwoven" with CJF.  S.E.C. v. Great Lakes Equities Co., 775 F. Supp. 211, 214 (E.D. Mich. 1991).   The fact that Campbell was able to misuse hundreds of

thousands of dollars of CJF's assets in just over one year for personal benefit establishes that CJF was merely a fictional entity created for the benefit of Campbell and Wozniak. Moreover, Campbell admitted that, alongside her colleague Ms. Wozniak, she "owned and controlled CJF." Plainitff's Motion for Summary Judgment, [Doc. #39], Ex. A, 2. Accordingly, Campbell and CJF are jointly and severally liable.

## C. REMEDIES

### 1. Permanent Injunction

Pursuant to Fed. R. Civ. P. 65(d), the SEC asks the Court to impose a permanent injunction enjoining Defendants and their agents from engaging in further conduct in violation of the securities regulations on question. *Plaintiff's Complaint*, 11.

The SEC may seek a permanent injunction against future violations of securities laws upon demonstrating there is a reasonable and substantial likelihood that, if not enjoined, the Defendant would violate securities laws in the future. *See S.E.C. v. Youmans,* 729 F.2d 413, 415 (6th Cir. 1984). In *SEC v. Youmans*, the Sixth Circuit found that the following factors should be considered in determining the likelihood of future violations: 1) "the egregiousness of the violations"; 2) "the isolated or repeated nature of the violations"; 3) "the degree of scienter involved"; 4) "the sincerity of the defendant's assurances, if any, against future violations"; 5) "the defendant's recognition of the wrongful nature of his conduct"; 6) "the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations"; and 7) "the defendant's age and health." *Youmans*, 729 F.2d at 415. No single factor is determinative. *Id.*

The factors set forth in *Youmans* weigh in favor of entering a permanent injunction.

Campbell blatantly misused hundreds of thousands of dollars of CJF's investment funds for personal benefit. *See Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A. During the course of about one year, Campbell repeatedly misrepresented investment returns in order to hold-off investors' suspicions. Campbell admits to carrying out a "scheme to defraud." *Id.*, 3. While Campbell's guilty plea does show that she recognizes the wrongful nature of her conduct, it does not outweigh the overall egregiousness of her conduct as CJF's "Chief Financial Officer." Accordingly, a permanent injunction is necessary to protect the public. *See S.E.C. v. Gagon*, 10-11891, 2012 WL 994892 at *10 (E.D. Mich. March 22, 2012) (Entering a permanent injunction enjoining future violations of securities laws). Therefore, Plaintiff's request for a permanent injunction should be GRANTED.

2. Disgorgement and Prejudgment Interest

The SEC also asks that the Court hold Defendants jointly and severally liable for disgorgement of $794,274.10, with prejudgment interest of $39,198.52.

In *S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985), the Sixth Circuit reasoned that disgorgement is meant to compel "'a defendant to give up the amount by which he was unjustly enriched' rather than to compensate the victims of fraud.'" *Id. (Citing S.E.C. v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 102 (2d Cir. 1978). Moreover, "[o]nce the SEC has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement without inquiring whether, or to what extent, identifiable private parties have been damaged by...fraud." *U.S. S.E.C. v. Midwest Investments, Inc.*, 1996 WL 229783, *7 (6th Cir. 1996) (*citing S.E.C. v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985)). Because disgorgement is an equitable remedy, and because a precise calculation may be impossible it "need only be a reasonable approximation of profits causally connected to the

-14-

violation." *S.E.C. v. Salyer*, 2:08-cv-179, 2010 WL 3283026 at \*2 (E.D. Tenn., Aug. 18, 2010) (*citing S.E.C. v. Inorganic Recycling Corp.*, No. 99-cv-10159, 2002 WL 1968341 at \*2 (S.D.N.Y., Aug. 23, 2002).

The only record the Court can utilize to calculate Campbell's ill-gotten gain is Exhibit 1 to her Rule 11 Plea Agreement. *See Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. A.  In her Rule 11 Plea Agreement, Campbell agreed to pay restitution based on the figures contained in Exhibit 1, so the Court will assume that they accurately reflect  CJF's financials. The document indicates that a total of $1,195,470.10 was invested in CJF, but only $401,196 was returned to investors; thus, $794,274.10 was retained.  *Id.*  In light of the fact that Rule 11 Plea Agreement was based upon Exhibit 1, the Court finds it proper to impose disgorgement based on the above mentioned figures.  Accordingly,  Defendants are jointly and severally liable for $794,274.10, with credit for payments toward Campbell's criminal restitution penalty and with credit for the sale of forfeited property, as stipulated in the criminal judgment.  *See Plaintiff's Motion for Summary Judgment* [Doc. #39], Ex. E.

The SEC also seeks prejudgment interest of $39,198.52.  *See Plaintiff's Motion for Summary Judgment* [Doc. 39], 15.  "The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion."  *Endico Potatoes, Inc v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995).  In deciding whether to grant an award of prejudgment interest, a court should consider "(1) the need to fully compensate the wronged party for actual damages suffered; (2) considerations of fairness and the relative equities of the award; (3) the remedial purpose of the statute involved; and/or (4) such other general principles as are deemed relevant by the court."  *S.E.C. v. Mohn et al.*, No. 02-74634,

2005 WL 2179340 at *8 (E.D. Mich., Sept. 9, 2005) (*citing Wickham Contracting Co v. Local Union No. 3*, 955 F.2d 831, 833-34 (2d Cir. 1992).

In light of the severity of Defendant's criminal judgment, I do not recommend awarding the prejudgment interest of $39,198.52.   The criminal judgment imposed a $703,474.10 restitution penalty, a property forfeiture, and forfeiture money judgment of $1,190,470.10.  *See Plaintiff's Motion for Summary Judgment*, [Doc. #39], Ex. E.   Moreover, Campbell was sentenced to fifty-one months in prison.  Because Campbell and CJF were essentially one-in-the-same, it is difficult to imagine what would be gained by imposing an additional financial penalty. Therefore, it is appropriate for the Court to exercise its "broad discretion" in refusing to award Plaintiff's request for prejudgment interest.  *See Endico Potatoes, Inc v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071-72 (2d Cir. 1995).

### 3. Civil Penalties

The SEC also asks the court to impose civil penalties. Pursuant to Section 20(d) of the Securities Act, Section 209(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act, the Commission may seek civil penalties for the violation of federal securities laws.  The criteria for imposing a civil penalty is based upon the Court's discretion in light of the facts and circumstances of each case.  *Id.*  Courts look to the same factors when imposing civil penalties as in the issuance of a permanent injunction.  *See S.E.C. v. Brethen*, No. C–3–90–071, 1992 WL 420867 at *25 (S.D. Ohio, Oct. 15, 1992).  As discussed above, in *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984), the Sixth Circuit set forth a number of factors which courts are to consider when deciding to issue a permanent injunction. ((1) "the egregiousness of the violations"; (2) "the isolated or repeated nature of the violations"; (3) "the degree of scienter involved"; (4) "the sincerity of the defendant's assurances, if any, against future violations"; (5)

-16-

"the defendant's recognition of the wrongful nature of his conduct"; (6) "the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations"; and (7) "the defendant's age and health.")

Because these factors were discussed above in regard to a permanent injunction, there is no need to repeat that discussion here. Regardless, I do not recommend imposing a civil penalty. While I recognize the egregiousness of the Defendants' conduct, I fail to see any marginal benefit in imposing additional financial penalties. Campbell's criminal judgment in conjunction with the civil judgment proposed in this Report and Recommendation serves as an "appropriate remedy." *See S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972) ("Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy.") After all, "[T]he civil penalty framework is of a 'discretionary nature' and each case has 'its own particular facts and circumstances which determine the appropriate remedy to be imposed'" *S.E.C. v. Opulentica, LLC*, 479 F. Supp.2d 319,331 (S.D.N.Y. 2007) (*citing S.E.C. v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996). Imposing a civil penalty would be draconian in light of Campbell's restitution penalty of $703,474.10, property forfeiture, money judgment of $1,190,470.10, and significant prison sentence.

## IV.   CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #39] be GRANTED. Defendants are jointly and severally liable for $794,274.10, with credit for payments toward Campbell's criminal restitution penalty and with credit for the sale of forfeited property, as stipulated in the criminal judgment. *See Plaintiff's Motion* [Doc. #39], Ex. E

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for

-17-

in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 30, 2012


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on July 30, 2012.

Candice D. Campbell
31461 Block St Apt 303
Garden City, MI 48135-1958

C. J. 's Financial
31461 Block St Apt 303
Garden City, MI 48135-1958

s/Johnetta M. Curry-Williams
Case Manager


-18-